Opinion of the court by
Judge Mills.
[Absent Ch. Justice Bibb.]
John and Upton Beckwith exhibited this bill, to be relieved against two judgments at law, of five hundred dollars each, obtained against them by the plaintiff in error, Churchill, on two notes executed by them to Hugh Morrison, one of which was assigned to Churchill, directly, the other was assigned by Morrison to Levi Tyler, and by him to Churchill. The injunction was dissolved, pending the bill, as to both these judgments, and was reinstated as to one of them, by two of the judges of this court, and on the final hearing, it was dissolved as to that also; but by the decree, Churchill was not allowed to take out execution, until he entered into bond in the clerk’s office, with surety approved by the clerk, conditioned to refund the money, if the lot for which the notes were given, was ever lost or taken away, by any claim superior to that sold and conveyed by Morrison to the Beckwiths. To reverse this decree, Churchill has prosecuted this writ of error.
We need say nothing of the decree as it respects one of the notes and judgments, as in this, Churchill has been successful, and was entitled to be so; because it is shewn that he purchased that note from Morrison, under a full assurance from the Beckwiths that it should be paid, and it has been so often held that the obligor or payor of a note, may bar any equity which he may have against the obligee, by inducing the assignee to purchase it, or by first flattering him with assurances that it would be paid, that it is now unnecessary to cite authorities to prove the doctrine. Besides of this part of the decree, Churchill cannot, and does not complain.
Farther statement and the question for decision propounded.
Decree of the circuit court.
Assignee of a note for a part of the price of land can in no case be decreed to give bond for the security of the title, otherwise be perpetually restrained From the collection.—Such a decree is erroneous against assignee, even when a perpetual injunction would be proper.
*74 The equity by which the payment of the second and last note is resisted, is the question which claims our attention. Various grounds are stated in the bill, but all except one, is controverted by the answer and not made out in proof, and therefore they need not be noticed. This one is simply this. The note was given by Beckwiths to Morrison as one, and the last, instalment due for a lot of ground in Louisville, the title of which lot had been conveyed by Sarah Beard to Fortunatos Cosby, and from Cosby transmitted by sundry mesne conveyances to Morrison, and by Morrison to the Beckwiths; and in this last sale it was estimated at $2500 or $3,000. The prices, at which it passed in previous sales does not appear, nor by what kind of warranty. When Sarah Beard conveyed it to Cosby, it was part of a large estate, conveyed at the same time, the whole of which, together with the other estate, was forthwith mortgaged to her by Cosby to secure the purchase money. The representatives of Sarah Beard, she having departed this life, and Cosby, who are made parties to this suit, both acknowledge that this mortgage is discharged, except a small sum, perhaps not quite equal to the note now in contest. This sum, Cosby says he would have paid, but Sarah Beard’s representatives declined to receive it, till the event of some contest about the estate or part of it, depending in the Federal court is determined, and Mrs. Beard’s representatives likewise allege, that they have concluded not to receive it, and thus the mortgage for this small balance, is suffered to sleep between them. To guard against the consequences of this, Churchill was not allowed execution till he executed his bond of indemnity.
It is evident that the decree cannot be right. For upon what principle Churchill, who was no party to the contract between Morrison and the Beckwiths, could be forever kept from his money, unless he would bind himself for the title sold by Morrison, is hard to be discovered. He is but the holder of the note as assignee, claiming his money first from the makers of the note, and secondly from his assignor, *75 and by the decree he is forever barred from doing either. A perpetual injunction would be a preferable attitude; and we conceive that Churchill might sustain his writ of error, to reverse the decree, even if the inevitable consequence were a perpetual- injunction.
Purchaser after accepting a conveyance with covenants on which he has adequate remedy at law, cannot enjoin the assignee from the collection of a part of the price, because of an incumbrance without asking a rescission.
Otherwise if the grantor has become insolvent.
But if it appear in such case vendor was insolvent at the sale, and the covenants in the prior conveyances to him running with the land were exclusively relied upon, he shall not have an injunction.
*75 But it is insisted, that no injunction, either perpetual or temporary, ought to be granted, because the contract of Morrison with the Beckwiths has been executed on the part of Morrison, and that Morrison has conveyed with a covenant of warranty and seizin, and therefore, the Beckwiths ought to be compelled to rely on their remedy on the warranty, and not to detain any part of the purchase money, and that as their bill does not seek to rescind the contract, they ought not to be allowed to stop its progress. It is true, the bill does not seek to set aside the contract, and we readily concede that they ought not to be allowed to keep the estate and money both, unless under special circumstances, and for other purposes, their bill can be sustained on other grounds. We also admit, that equity in general will not grant relief, when the contract is executed by warranty. The grantee must then be compelled to rely upon it, instead of contesting the payment of the purchase money.
But the bill in this instance, charges that Morrison is dead and insolvent, and his estate is wholly unable to remove the lien or incumbrance, or remunerate his grantee, in case the estate is lost. In such case it is competent for a vendee to go into equity, without intending to rescind the contract, to procure the appropriation of the purchase money to removing the incumbrance, and on this ground alone can this bill be held tenable.
The answer of Churchill admits the insolvency of Morrison, and contends that he was known to the complainants to be so at the date of the contract, and that the estate was sold to pay his debts, and the complainants did not then rely upon his warranty, but on that of the previous grantor’s, which was assigned by Morrison’s grant, the grantors in which *76 are amply solvent. If this defence was made out in proof, it might be availing; but the conveyances from these men are not filed, their situation is not shewn, nor is where any proof of Morrison’s embarrassment when he sold to the complainants.
When the mortgage is made to bear on the different purchasers of all the property from the mortgagor, they shall contribute according to the value of their parcels at the date of the mortgage.—But if the mortgagor retained any part, that shall be first subjected.
An enquiry into facts left uncertain in the record directed by the court enable the chancellor to decree a right.
*76 As the complainants have prima facie shewn a ground for coming into a court of equity, the question remains, what relief is to be granted? Is a perpetual injunction the proper redress? We conceive not. If that is granted, the complainants may forever keep the estate, and also this part of the purchase money. The proper redress must be, to awaken the mortgage from Cosby to Sarah Beard, and to remove its effects from the estate in controversy. If that can be done, without the application of the money in contest, then Churchill will be, entitled to a dissolution of the injunction; but if a part of this money is necessary to remove the burden, then the complainants can be entitled to relief as to such part only, not by being discharged from the payment of it; but by directing its payment for their security. By inspecting the mortgage, it will be seen, that the estate mortgaged is a large one, and the price considerable, and all but a small sum is now paid. It is a well known principle, that a mortgage binds every part of the land it covers, and each spot is subject to its operation, and when it is made to bear on purchasers of different parcels from the mortgagor, they are bound to contribute only in proportion to the value of the share, that each holds, fixing that value at the date of the mortgage, Stevens vs. Cooper, 2 John. Chy. Rep. 430. It is also a correct, doctrine that as between these purchasers and the mortgagor, if he holds a proportion of the estate himself, such portion must first be subjected entire. If it discharges the demand, the purchasers are clear; if it does not, then they must contribute proportionably to make up the residue.
Now it seems more than probable, even if Cosby has sold the whole estate mortgaged by him, so that the balance due from him must fall on every part equally, that the proportion of that balance, which *77 will fall to the share of the complainants will not be nearly equal to the sum which they have in their hands, now claimed by Churchill. But if Cosby has not parted with the whole estate, but still retains a portion thereof, that portion may be more than equal to the discharge of the balance due on the mortgage, and these facts must be ascertained, before it can be clearly perceived what redress is to be given to the complainants.
If the mortgagor, after selling part of the estate, will not pay or otherwise secure a balance of the mortgage money, his assignee of a note for it, who is enjoined from the collection, may compel him to secure it on the balance of the estate.
And if sufficient, obligors, injunction against the collection of it shall be then dissolved.
If in such a case, mortgagor has sold all the land and is insolvent, the purchasers shall all contribute—and the portion of one who has not paid in full may be set off against the balance on which assignee has judgment.
*77 The proper mode to ascertain this, is to direct an account to be taken by a commissioner, of the sums paid and balance due, on the mortgage, between Cosby add Mrs. Beard’s representatives, shewing the true balance; also of the value of the whole estate mortgaged, at the date of the mortgage, and of the part sold by Morrison to the complainants, so that the proportion of the mortgage money chargeable thereon, may be clearly seen. By the same proceeding, it must be ascertained whether Cosby has sold the whole of the estate mortgaged by him, and to, whom, or whether, he still retains a portion thereof, and of what value. By the same commissioner, it may be ascertained whether Sarah Beard’s representatives still refuse to receive the money from Cosby, or Cosby declines paving it. If they receive, and he shall pay or secure it, then there will, be no further obstacle for the dissolution of the injunction. If the obstruction is not thus removed, and Cosby shall retain at this time, a portion of the estate amply sufficient to discharge the balance due, and he will not otherwise indemnify the complainants, then he must be compelled to execute to the complainants, a mortgage on the estate so retained by him, defeasible on his paying the balance due, to Sarah Beard’s representatives, and keeping them indemnified from that incumbrance, and in either of these events, the injunction against Churchill must be dissolved.
But if it shall be ascertained, that Cosby has sold the whole of the estate mortgaged by him, then the proportion of the balance due, which is chargeable to the estate now in contest, must be decreed to Sarah Beard’s representatives, and the injunction *78 of the complainants must be dissolved as to the residue. It might be equitable, to decree the amount for which the injunction shall be perpetuated in this event, in favour of Churchill against Cosby, as he would be entitled to stand by substitution in the place of a purchaser from Cosby.
And assignee in such case may have decree over against his assignor—if he put in a cross bill against him asking for it, otherwise not.
Triplett, for plaintiffs; Mayes, for defendant.
But this cannot be granted to him in this suit, as he has not interpleaded with Cosby, or shaped his defence in such a manner as to entitle him to a decree against his co-defendants. His claim in this respect must, therefore, be left to some future mode of redress. We shall barely remark, that in making the assessment, and inquiry into facts directed by the court to the commissioner, it will be proper that the commissioner should be authorised to receive such legal evidence touching the matters of inquiry, as either party may produce, and also to apply by appropriate interrogatories to the consciences of either party concerned, to be answered on oath. It will be easily seen, that in making of this valuation and assessment of the ratio of contribution, the whole purchasers under Cosby, will become necessary parties, or they will not be bound by the valuation or the proportionate contribution, assessed on their respective shares. It therefore, will be expedient to direct the commissioner first to ascertain the balance due on the mortgage, and whether it has been, or could be extinguished by the payment of Cosby, or any indemnity herein directed to be given to the complainants by him, and if this cannot be done, and the necessity of making the assessment on all the purchasers cannot be avoided, then the complainants bill must he dismissed without prejudice, unless he shall in a reasonable time, bring all the present holders of the estate sold by Cosby, before the court.
The decree must be reversed with costs, and the cause be remanded, for such decree and proceedings to be therein had, as may not be inconsistent with this opinion.